**GULF OIL CORPORATION and Caribbean Gulf Refining Corp., Plaintiffs,**

v.

**Walter J. HICKEL et al., Defendants,**

and

**Commonwealth Oil Refining Co., Inc., Intervenor.**

**Civ. A. No. 127–69.**

United States District Court
District of Columbia.
July 11, 1969.

Royce H. Savage, Pittsburgh, Pa., Jesse P. Luton, Jr., Kenneth C. Keener, Houston, Tex., Thomas P. Kerester, Washington, D. C., for plaintiffs.

William D. Ruckelhaus, Asst. Atty. Gen., David G. Bress, U. S. Atty., for District of Columbia, David Orlikoff, Harland F. Leathers, Attys., Dept. of Justice, Washington, D. C., for defendants.

Hugh H. R. Smith, Daniel K. Mayers, Dennis M. Flannery, Wilmer, Cutler & Pickering, Washington, D. C., for intervenor.

## MEMORANDUM

JOHN LEWIS SMITH, Jr., District Judge.

Plaintiffs bring this suit for declaratory judgment and mandatory injunction. Jurisdiction is based on 28 U.S.C. § 1331, § 2201, § 2202 and 5 U.S.C. §§ 701 et seq. The parties have submitted the case on cross-motions for summary judgment.

Plaintiff Gulf Oil Corporation (Gulf) is engaged in producing and refining crude oil and marketing petroleum products throughout the world. Plaintiff Caribbean Gulf Refining Corporation (Caribbean) is a wholly owned subsidiary of Gulf and operates an oil refinery in Puerto Rico. Defendant Walter J. Hickel is the Secretary of the United States Department of the Interior; the other named defendants are Interior Department officials: the Administrator of the Oil Imports Administration and the chairman and other two members of the Oil Imports Appeals Board (Board). Intervenor Commonwealth Oil Refining Co., Inc. (Commonwealth) is an oil refiner with facilities located in Puerto Rico.

Presidential proclamation 3279 of March 10, 1959, (24 F.R. 1781), as amended, conferred, *inter alia,* authority upon the Secretary of the Interior to adjust and regulate imports of petroleum products into Puerto Rico. Oil Import Regulation No. 1, March 13, 1959, (24 F.R. 1907), was promulgated to implement the Proclamation and, with a view towards this, established the Oil Imports Administration, the position of Administrator, and the Oil Imports Appeals Board. An oil import allocation ruling of the Administrator, affirmed by the Board, is here challenged. Plaintiffs contend that the decision of the Board was arbitrary, inequitable, and contrary to the Proclamation and the Regulation.

Specifically, Gulf and Caribbean complain of the Board's decision to affirm disapproval of 3,539 of the 37,250 barrels per day (b/d) which Gulf and Caribbean certified as their estimated requirements and requested as their allocation for import into Puerto Rico for the period of April 1, 1968 through March 31, 1969. Estimated requirements (the basis established by the Proclamation for allocations) are computed

by totaling the refiner's local on-island demand with a United States mainland shipment quota based on actual 1965 shipments. These 3,539 b/d represent a volume which was the subject matter of an "exchange agreement" between Gulf and Caribbean, Commonwealth, and Esso International. Having no refinery capability in Puerto Rico, Esso had contracted with Commonwealth for the latter to supply Esso with its on-island petroleum requirement. Due to the physical locations of the Caribbean and Commonwealth facilities in Puerto Rico, a further arrangement was arrived at whereby Caribbean would actually supply a part of Esso's requirements from its refinery and in exchange Commonwealth would furnish Caribbean a like amount of petroleum products for shipment by Gulf to the United States mainland. Gulf and Caribbean claim that they should be "credited" with these 3,539 b/d towards their shipment quota as they shipped them from Puerto Rico. However, the Board allocated the volume to Commonwealth since it physically refined the product. The allocation of the 3,539 b/d is an either/or proposition; hence Commonwealth's intervention. Plaintiffs, moreover, not only ask that the court declare defendants' ruling null and void but that it further order that plaintiffs be issued a license for the April 1968—March 1969 and all succeeding allocation periods based on its on-island demand and shipment demand of the 3,539 b/d plus an additional 1,503 b/d under two similar "exchange agreements" (Commonwealth was also the refiner) as well as for 8,758 b/d under a "processing agreement" it had with Commonwealth. Pursuant to this latter agreement a Gulf subsidiary in Venezuela sold crude oil to Commonwealth, another Gulf subsidiary transported the crude oil to Puerto Rico where Commonwealth refined it and then sold the same quantity of finished petroleum products to Gulf which shipped 8,758 b/d of it to the United States mainland. Plaintiffs request the court to declare that their total base for import allocation be established at 47,511 b/d (28,661 b/d on-island demand, 5,050 b/d refined and shipped by them, 5,042 b/d as a result of "exchange agreements" and 8,758 b/d from the "processing agreement") vice the 33,711 b/d (28,661 plus 5,050) allowed by the Board. While plaintiffs requested the Board to validate its base as including the entire amounts of the "exchange" and "processing" agreements, they had actually only included the 3,539 b/d in their April, 1968—March 1969 allocation request.

The Board based its denial of Gulf and Caribbean's petition partly upon finding that the petitioners had not shown error on the part of the Administrator and partly upon its determination that the petitioners had not established a showing of "exceptional hardship" to a sufficient degree to require reversal of the Administrator's ruling.

The basic rational for the Administrator's ruling was that, when viewed against the economic considerations necessitating the Proclamation, the intent and understanding at the time of its promulgation was that the shipping base portion of the import allocation is to be determined by reference to manufacture (refining) and sale, and not to sale or shipment alone and that subsequent regulatory implementation and actual allocations have been consistent with this view. Plaintiffs contend that it was error for the Board to conclude that import allocation be made to the one who physically refines rather than to the one for whom the product is refined or who ships it. Plaintiffs assert that neither the Proclamation nor the Regulation support the Administrator or the Board. Moreover, plaintiffs contend that, in essence and substance, they are the "refiner" under the "exchange" and "processing" agreements and that they have presented a sufficient showing of "economic hardship" by adequately substantiating that the denial of the 3,539 b/d allocation will result in an annual loss of profits of some $2,500,000.

The Board's decision reads in part as follows:

At the close of 1967 or early 1968 a policy decision was made to eliminate shipments of petroleum products from Puerto Rico to District V [western United States] and to limit such shipments to the other Districts [of the United States mainland] to the 1965 level (except for special arrangements tied to development of the Puerto Rican economy). The device chosen for making these restraints effective was a limit placed on the individual refiner in Puerto Rico, with penalty (in the form of loss of future allocation) to any who might breach its individual limit. There is no intimation in Proclamation or Regulations that these specific policy instruments were accompanied by another policy change—to break the tie between the requirement for foreign crude oil and refinery production.

The Board believes that the petitioner is correct in saying that the applicable Regulations contain no explicit requirement that a refiner produce in its own plant the product shipped in order to establish a base respecting shipment to Districts I–IV [eastern United States]. The Regulations are silent on the point, perhaps because the link to production was apparently understood and accepted since the inception of mandatory controls by all concerned, including the petitioner.

Gulf seems to be saying to the Board: we are a recognized refiner in Puerto Rico and not a mere merchant as are some other oil companies. With our refiner's status established, and in view of the absence of specific prohibition in the Regulation, we claim that part of the shipments base (and therefore of the refinery allocation) of our competitor refiner should be given to us on the basis of our merchant operations. Surely this is neither equitable nor logical. The Board cannot agree with petitioner that the Administrator erred in computing petitioner's current allocation.

Gulf has given relatively little effort to development of its claim of exceptional hardship. It has rested on a general identification of certain disadvantageous adjustments which it states the company must make. Gulf estimates loss of profits in significant amount, but the method and nature of this estimate are not explained and are not documented. The Board believes it may be possible for Gulf, with the scope and diversity of its operations, to adjust to its current Puerto Rican allocation without exceptional hardship. This belief is supported to some degree by the record which shows that petitioner has made some dramatic shifts in its product distribution patterns in recent years, apparently without financial distress. Petitioner's evidence of exceptional hardship is not considered adequate.

It is well settled that courts will not overrule an interpretation or decision of an administrative body unless it can be shown that the ruling is arbitrary, unreasonable, without foundation in the evidence before it, or inconsistent with the controlling regulations. Udall v. Tallman, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); Bowles v. Seminole Rock Co., 325 U.S. 410, 65 S.Ct. 1215, 89 L.Ed. 1700 (1944).

The Board's decision is based on historical practice and is consonant with past interpretation and implementation of the Proclamation and the Regulation. Examination of the motions for summary judgment, the statements of material facts, and the points and authorities with exhibits attached thereto, clearly reveals that the decision of the Board is reasonable and consistent with the evidence presented and is not arbitrary or capricious.

Accordingly, it is this 11th day of July, 1969,

Adjudged that defendants' and intervenor's motions for summary judgment

be and they hereby are granted and plaintiffs' motion for summary judgment is denied.

Counsel will submit an appropriate order.